JOURNAL ENTRY AND OPINION
Defendant-appellant Thomas Siller ("appellant") appeals from his conviction for felonious assault, aggravated burglary, aggravated robbery, attempted aggravated murder, and kidnapping.
Appellant assigns the following error for review:
 THE TRIAL COURT ERRED IN IMPOSING A CONSECUTIVE SENTENCE FOR KIDNAPPING WHERE IT CONSTITUTED AN ALLIED OFFENSE OF SIMILAR IMPORT TO THE COUNTS OF ATTEMPTED AGGRAVATED MURDER AND AGGRAVATED ROBBERY AND NO SEPARATE ANIMUS EXISTED.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
At 3:49 a.m. on June 4. 1997, an anonymous 911 phone call was made from a pay phone on Fleet Avenue in Cleveland reporting that a female had been assaulted at 6211 Hosmer Avenue. Officer Douglas Mendat and his partner responded to the report and discovered that the home was all lit up. After receiving no response to a knock on the front door, the police officers went to the back door which was propped open with the wooden door frame splintered. Because this is a sign of forced entry, the officers entered the home with their weapons drawn. The officers heard the television playing loudly. The house had been ransacked with drawers opened and the contents strewn about the house. The phone was ripped from the dining room wall.
In the living room, the officers discovered seventy-four year old Lucy Zolkowski sitting propped up in a chair. They heard a noise like a wheezing sound. Zolkowski's night gown had been ripped and shredded, exposing part of the woman's skin. Lucy Zolkowski was beaten, her head having been badly disfigured. Zolkowski's eyes were swollen shut, she had multiple facial fractures, a hole in her chin, and a broken jaw. Zolkowski was breathing with difficulty. Blood was dripping down on her chest and was splattered on the walls behind Lucy Zolkowski's chair.
Paramedics arrived on the scene and discovered that Lucy Zolkowski's wrists and ankles were bound to the chair with pieces of her night gown. Another piece of cloth was around Zolkowski' s neck. Lucy Zolkowski's restraints were so tight that her skin had swollen around the cloth, preventing the police or paramedics from first realizing she was bound. Her skin was bluish in color and much of the blood had dried. Zolkowski was semi-conscious but unable to communicate with anyone. At the time of trial, Lucy Zolkowski remained unable to communicate or respond in any fashion and was living in a nursing home.
The investigation of the crime soon led police to appellant and his co-defendant, Walter Zimmer. The police discovered a fingerprint matching appellant's on an ashtray found in Zolkowski's living room. The police lifted Walter Zimmer's fingerprint from a glass block window which was on the kitchen floor. A fingerprint belonging to Jason Smith was found on a dresser in one of the bedrooms.
Appellant and Zimmer were often at Lucy Zolkowski's home, performing various repairs to the residence. Appellant and Zimmer also were borrowing money from the elderly woman. Between January and June, Zolkowski withdrew money from her Individual Retirement Account and redeemed bonds. Tally sheets found on a table next to the victim showed that Zimmer borrowed over seven thousand dollars ($7,000) from Zolkowski while appellant borrowed more than twelve thousand dollars ($12,000). Zolkowski wrote a series of checks to the men, beginning in April. The last check written to appellant was dated June 3, 1997.
The police also charged Jason Smith in the crime. Smith entered into a plea agreement with the prosecution in exchange for his testimony. Smith related that he knew both appellant and Zimmer through illegal drug activity, having sold crack cocaine to both men. Smith, Zimmer, and appellant went to Zolkowski's home on June 3, 1997, so appellant and Zimmer could borrow money from her. Zimmer and appellant entered Zolkowski's home through the front door and came out a few minutes later with twenty to thirty dollars ($20-30). After procuring crack cocaine and using the drug, the three men still desired more crack cocaine. Appellant, Zimmer, and Smith returned to Zolkowski's home around 11:30 p.m. Smith waited while appellant and Zimmer entered the residence. After thirty to forty minutes, Smith became anxious and also went inside, entering through the back door as had the other men. Smith saw appellant rummaging through Zolkowski's belongings. Smith wanted to take something for himself. Smith spotted a box of personal checks in a back room. Smith picked up the box of checks and walked into the dining room. From there, Smith could see Zimmer standing over Lucy Zolkowski in the front room. Zimmer was asking Zolkowski where it was at. Zolkowski was bloodied and her clothes were torn. Zimmer shook and struck the woman. Smith put the checks on the dining room table and left, not wanting to be associated with the beating.
Both appellant and Zimmer were indicted for felonious assault, aggravated burglary, aggravated robbery, attempted aggravated murder, and kidnapping. A jury convicted Zimmer and appellant of all five counts charged.
 II.
In his sole assignment of error, appellant contends the trial court erred by not merging his sentence for kidnapping with his sentences for the offenses of attempted aggravated murder and aggravated robbery. Appellant argues that there was no evidence of a separate animus for the kidnapping, making it an allied offense of similar import. Appellant asserts that Lucy Zolkowski only was restrained for the commission of the aggravated robbery and attempted aggravated murder, and not in the furtherance of a kidnapping.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In Newark V. Vazirani (1990), 48 Ohio St.3d 81, syllabus, the Supreme Court of Ohio held:
 Under R.C. 2941.25 a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
 State v. Logan (1979), 60 Ohio St.2d 126, established the test to be applied when determining if kidnapping and another crime are allied offenses of similar import. Logan held:
 In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25 (B), this court adopts the following guidelines:
 (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.
R.C. 2905.01 (A) (2) defines kidnapping as the removal of a person by force, threat, or deception from the place where the other person is found or the restraint of the liberty of the other person in order to facilitate the commission of any felony or flight thereafter. The elements of aggravated robbery are set forth in R.C. 2911.01 (A) (1) which forbids anyone from attempting or committing a theft offense while having a deadly weapon on or about the offender's person or under the offender's control and either displaying or brandishing the weapon or indicating that the offender possesses the weapon or uses it. Attempted aggravated murder requires the state to prove that the defendant attempted to purposefully cause the death of another while, committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, or aggravated burglary or burglary.
In State v. Jells (1990), 53 Ohio St.3d 22, the court held that the elements of kidnapping and aggravated murder were not similar. In that case, the court found that the kidnapping was complete when the victim was forced into a van and driven away. The victim later was murdered. The kidnapping was not merely incidental to the murder. In State v. Reynolds (1998), 80 Ohio St.3d 670, a separate animus was found where the victim's hands were restrained for a period of time before she was killed. InState v. Luff (1993), 85 Ohio App.3d 785, kidnapping and aggravated murder were held to be dissimilar when the victims were led into a barn and restrained with duct tape, thereby completing the offense of kidnapping. The victims then were murdered, which was an offense separate from the kidnapping. In State v. Puckett (Mar. 27, 1998), Greene App. No. 97 CA 43, unreported, the Second District Court of Appeals held that a sixteen hour period of restraint made a kidnapping offense more than merely incidental to the attempted murder offense. See also State v. Brown (1984),12 Ohio St.3d 147.
Appellant and Zimmer tore Lucy Zolkowski's nightgown and used the pieces to tightly bind the seventy-four year old's wrists and feet. Another piece of cloth garrotted Zolkowski's neck, restricting her ability to breath. Zolkowski was left bound to her chair for hours, allowing her tissues to swell to such a degree that police and paramedics did not at first realize she was restrained. Zolkowski's restraint was prolonged and substantially increased the harm she suffered separate and apart from the beating which led to the attempted aggravated murder conviction. As noted in State v. Benasutti (July 19, 1996), Clark App. No. 95 CA 109, unreported, one can purposefully cause the death of another without restraining him or removing him from the place he was found. The restraint was hardly necessary to carry out the attempted murder, especially when these two men were faced with an elderly, nearly helpless victim. The kidnapping and attempted murder of Lucy Zolkowski were not allied offenses of similar import.
Appellant also contends that the aggravated robbery offense was allied with the kidnapping charge. Appellant argues that every robbery necessarily involves a kidnapping because the victim's movements are restrained during the robbery. See Reynolds, supra.
However, a momentary restraint differs from moving a victim. Also, a prolonged or extreme restraint is unnecessary to commit robbery. See State v. Gore (Feb. 17, 1999), Mahoning App. No. 94 CA 97, unreported. In the instant case, the restraint of Lucy Zolkowski was both prolonged and extreme, far exceeding the force or momentary restraint required for carrying out an aggravated robbery. Zolkowski was not released in a safe place following her ordeal, but left restrained, choking from lack of air, and unable to summon any aid.
Appellant's assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The Defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and PATRICIA A. BLACKMON, J. CONCUR.
 _________________________________ LEO M. SPELLACY JUDGE